IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTONIO HARDY,
      Petitioner,

vs.                          Case No.:  3:14cv144/MCR/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's third amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (ECF No. 15).  Respondent filed an answer and relevant portions of the state court record (ECF No. 30).  Petitioner filed a reply (ECF No. 38).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2008-CF-6247, with one count of sale or delivery, or possession with intent to sell or deliver, cocaine within 1,000 feet of a place of worship or a convenience business (Count 1) and one count of sale or delivery, or possession with intent to sell or deliver, marijuana within 1,000 feet of a place of worship or a convenience business (Ex. A at 1).[1] Following a jury trial, Petitioner was found guilty of sale or delivery, or possession with intent to sell or deliver, cocaine within 1,000 feet of a school as to Count 1, and guilty of the lesser included offense of possession of less than 20 grams of marijuana as to Count 2 (*id.* at 84, Exs. B, C).[2]  On August 19, 2009, the court adjudicated Petitioner guilty and sentenced him to 75.9 months in prison, with a 3-year mandatory minimum term, on Count 1, with pre-sentence jail credit of 200 days, and time served on Count 2 (Ex. A at 90–96, 101–47).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-4460 (*see* Ex. A at 148, Exs. D, E, F).  On September 24, 2010, the

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 30).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

[2] On the day of trial, the State orally amended the charges to substitute the specified location as a school, instead of a place of worship or a convenience business (*see* Ex. B at 5–10).

First DCA affirmed the judgment per curiam without written opinion (Ex. G).  Hardy v. State, 45 So. 3d 464 (Fla. 1st DCA 2010) (Table).  The mandate issued October 13, 2010 (Ex. G).

On February 22, 2011, Petitioner filed motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H at 22–59).  He subsequently filed an amended motion (*id.* at 70–109).  The state circuit court held a limited evidentiary hearing on two of Petitioner claims (*id.* at 122–23, 134–93).  Following the evidentiary hearing, the circuit court denied the Rule 3.850 motion (Ex. I at 194–206).  Petitioner appealed the decision to the First DCA, Case No. 1D12-4328 (Ex. I at 338, Ex. J).  The First DCA affirmed the decision per curiam without written opinion on July 17, 2013 (Ex. M).  The mandate issued August 13, 2013 (*id.*).  Hardy v. State, 117 So. 3d 1091 (Fla. 1st DCA 2013) (Table).

On August 15, 2012, during the pendency of the post-conviction appeal, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D12-4008, alleging ineffective assistance of appellate counsel (Ex. N).  The First DCA denied the petition on the merits on September 25, 2012 (Ex. O).  Hardy v. State, 98 So. 3d 201 (Fla. 1st DCA 2012) (Mem).

On April 10, 2013, Petitioner filed a Rule 3.850 motion alleging newly discovered evidence (Ex. P at 1–10).  The state circuit court denied the motion in an order rendered August 30, 2013 (*id.* at 11–13).  Petitioner appealed the decision to the First DCA, Case No. 1D13-4588 (*id.* at 91, Ex. Q).  The First DCA affirmed the decision per curiam without written opinion on January 27, 2014 (Ex. S).  The mandate issued February 24, 2014.  Hardy v. State, 132 So. 3d 226 (Fla. 1st DCA 2014) (Table).

Petitioner filed the instant federal habeas action on March 21, 2014 (ECF No. 1).

## II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives

at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73

(quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that

"[a]voiding these pitfalls does not require citation to our cases—indeed, it does not

even require awareness of our cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct.

362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State

court decision is found in either respect to be contrary, the district court must

independently consider the merits of the petitioner's claim.  Moreover, where there

is no Supreme Court precedent on point, the state court's conclusion cannot be

contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880,

890 n.15 (11th Cir. 2003).

     If on the other hand, the State court applied the correct Supreme Court

precedent and the facts of the Supreme Court cases and the petitioner's case are not

materially indistinguishable, the court must go to the third step and determine whether

the State court "unreasonably applied" the governing legal principles set forth in the

Supreme Court's cases.  The standard for an unreasonable application inquiry is

"whether the state court's application of clearly established federal law was

objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Richter</u>).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Richter</u>, 562 U.S. at 102; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)

(dictum).

When performing its review under § 2254(d), the federal court must bear in

mind that any "determination of a factual issue made by a State court shall be

presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C.

§ 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can

disagree with a state court's factual finding and, when guided by AEDPA, "conclude

the decision was unreasonable or that the factual premise was incorrect by clear and

convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007)

(holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by

clear and convincing evidence," and concluding that that standard was satisfied where

prisoner showed "clearly and convincingly" that the state court's decision

"contain[ed] an 'unreasonable determination' of fact."). The "unreasonable

determination of the facts" standard is only implicated to the extent that the validity

of the state court's ultimate conclusion is premised on unreasonable fact finding. *See*

Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by

clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct'

---

[4] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
            (B) (i)  there is an absence of available State corrective process; or
                (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance"

of such a claim to a state court.  In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995).  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if

state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]   The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

*Id.* With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell,

416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor
> indeed for petitioners seeking to establish exhaustion.  However, we
> agree with the district court that this language must be "applied with
> common sense and in light of the purpose underlying the exhaustion
> requirement[:] 'to afford the state courts a meaningful opportunity to
> consider allegations of legal error without interference from the federal
> judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting
> Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d
> 598 (1986)).  This is consistent with settled law established by the
> Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine
> requires a habeas applicant to do more than scatter some makeshift
> needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

An issue that was not properly presented to the state court and which can no

longer be litigated under state procedural rules is considered procedurally defaulted,

i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299,

1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally

---

[6] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal
case in a string citation containing other state cases, and in a closing paragraph in his argument that
extraneous materials were considered by the jury during deliberations, stated that there was a
violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the
United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell,
416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not
sufficient to meet the fair presentment requirement and noted that it was important that the petitioner
had never mentioned the federal standards regarding extraneous materials in his brief, but relied on
state law for his arguments. *Id.*

defaulted if it was presented in state court and rejected on the independent and
adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501
U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore,
269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be
procedurally defaulted under state law cannot be addressed by federal courts.");
Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state
procedural bar should be enforced by federal court even as to a claim which has never
been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir.
1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498
U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal
court must determine whether any future attempt to exhaust state remedies would be
futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the
second instance, a federal court must determine whether the last state court rendering
judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*.
A federal court is not required to honor a state's procedural default ruling unless that
ruling rests on adequate state grounds independent of the federal question.  *See* Harris
v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of
a state procedural bar to the assertion of a federal question is itself a federal question.

Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).  The Eleventh

Circuit has set forth a three-part test to determine whether a state court's procedural

ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley,

250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment

must clearly and expressly state it is relying on state procedural rules to resolve the

federal claim.[7]  Second, the state court's decision on the procedural issue must rest

entirely on state law grounds and not be intertwined with an interpretation of federal

law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement

has been interpreted to mean the rule must be firmly established and regularly

followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice

or a fundamental miscarriage of justice in order for the federal habeas court to reach

the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

exist, an external impediment, whether it be governmental interference or the

reasonable unavailability of the factual basis for the claim, must have prevented

petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

1454, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence —that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* <u>McQuiggin v. Perkins</u>, — U. S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in <u>Schlup</u>, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* <u>House</u>, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "Trial court erred in denying the defense motion for judgment of acquittal."</u>

Petitioner contends the trial court erred by denying defense counsel's motion for a judgment of acquittal ("JOA") (ECF No. 15 at 5, 18).[8]  He argues that the evidence against him was circumstantial, and failed to disprove his defense, that he did not have dominion and control over the contraband discovered in his vehicle after a search by law enforcement.  Petitioner contends the trial court's denial of the motion for a JOA violated his rights to due process and equal protection.

Respondent concedes that Petitioner exhausted this claim by presenting it to the state court on direct appeal on his conviction (ECF No. 30 at 15).  Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 16–20).

1.    <u>Clearly Established Federal Law</u>

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient

---

[8] Page references to the parties' pleadings reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

to convict, that is, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant.  In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  When reviewing a claim of insufficient evidence in federal habeas corpus, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citation omitted); *see also* Conklin v. Schofield, 366 F.3d 1191, 1200 (11th Cir. 2004).  The evidence need not rule out every theory except that which signifies guilt beyond a reasonable doubt; "[t]he simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief."  Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).  Moreover, because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant.  Wilcox, 813 F.2d at 1143.  "It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least

preponderate in favor of the state, that we become concerned with conflicting inferences."  Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982).

Under Florida law, where a conviction was brought about solely through circumstantial evidence, the State must meet a stricter burden of proof, that the evidence presented be "inconsistent with any reasonable hypothesis of innocence." State v. Law, 559 So.2d 187, 188 (Fla. 1989).  "The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine." Id.  However, this standard of proof is inapplicable for federal habeas review of a claim of insufficiency of the evidence; federal constitutional analysis under Jackson is all that is required.  Bishop v. Kelso, 914 F.2d 1468, 1472–73 (11th Cir. 1990); Wilcox, 813 F.2d at 1145 & n.7.

### 2.     Federal Review of State Court Decision

On direct appeal, Petitioner argued that the trial court erred by denying the motion for a JOA, because there was no evidence Petitioner had the ability or authority to exercise control over the drugs found in his car (Ex. D).  The First DCA affirmed the judgment without written opinion (Ex. G).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also*

Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See* Harrington, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See id.*; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Petitioner contends the First DCA's adjudication of his sufficiency-of-the-evidence claim was contrary to or an unreasonable application of federal law, because

there was insufficient evidence that he had dominion and control over the contraband (ECF No. 15 at 5, 18).

"A trial court should not grant a motion for judgment of acquittal 'unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.'" Jackson v. State, 25 So. 3d 518, 531 (Fla. 2009) (quoting Coday v. State, 946 So. 2d 988, 996 (Fla. 2006)).  "In reviewing the denial of a motion for judgment of acquittal, appellate courts apply a de novo standard of review and do not reverse a conviction where the conviction is supported by competent, substantial evidence." *Id.*  "In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt."  Simmons v. State, 934 So. 2d 1100, 1111 (Fla. 2006) (quoting Bradley v. State, 787 So.2d 732, 738 (Fla. 2001)).

As reflected in the instructions provided to the jury at Petitioner's trial, to prove the crime of possession of cocaine and/or marijuana, with intent to sell or deliver, the State was required to prove the following three elements beyond a reasonable doubt: (1) Petitioner possessed a certain substance with intent to sell or deliver, (2) the

substance was cocaine and/or marijuana, and (3) Petitioner had knowledge of the presence of the substance (Ex. A at 70).

Under Florida law, to "possess" means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed (Ex. A at 70). Possession may be actual or constructive (*id.*).  Actual possession means:  (1) the controlled substance is in the hand of or on the person, (2) the controlled substance is in a container in the hand of or on the person, or (3) the controlled substance is so close as to be within ready reach and is under the control of the person (*id.*).  Mere proximity to a controlled substance is not sufficient to establish control over that controlled substance when it is not in a place over which the person has control (*id.*).

Constructive possession means the controlled substance is in a place over which the defendant has control, or in which the defendant has concealed it (Ex. A at 71). *See* State v. Burrows, 940 So. 2d 1259, 1262 (Fla. 1st DCA 2006) (dominion and control can be established by showing the contraband was located in a place where the defendant had relinquished control by concealing it or in a place where the defendant had thrown it).  In order to establish constructive possession of a controlled substance if the controlled substance is in a place over which the defendant does not have control, the State must prove the defendant (1) had control over the controlled

substance and (2) had knowledge that the controlled substance was within the defendant's presence (*id.*).

Possession may be joint, that is, two or more persons may jointly possess an article, exercising control over it (Ex. A at 71).  In that case, each of those persons is considered to be in possession of that article (*id.*).  If a person has exclusive possession of a controlled substance, knowledge of its presence may be inferred or assumed (*id.*).  If a person does not have exclusive possession of a controlled substance, knowledge of its presence may not be inferred or assumed (*id.*).

At Petitioner's trial, Deputy Rappa testified that Petitioner was one of the registered owners of the car in which the cocaine and marijuana was found (Ex. B at 25, 36).  He also testified that Petitioner had a key to car in his pocket when he was searched (*id.* at 24, 29).  Deputy Rappa testified that he observed a photograph ID with Petitioner's name and picture on the center console of the vehicle (*id.* at 25).  Rappa testified that when the car was searched, the officers found crack cocaine, a digital scale, at least one "bank card" with Petitioner's name on it, and miscellaneous paperwork with Petitioner's name on it inside the center console (*id.* at 26, 44–45, 49–50).  Rappa testified that marijuana and plastic bags were found in the glove compartment (*id.* at 26, 42–43).  Deputy Rappa testified that Petitioner admitted that

he knew that narcotics were in his vehicle, but he denied ownership of them (*id.* at 48–49).

Based on Deputy Rappa's testimony, the First DCA's rejection of Petitioner's claim could have been based upon the theory that a rational trier of fact could find that Petitioner had dominion and control over, and thus constructive possession of, the cocaine and marijuana found in his vehicle.  It is possible that fairminded jurists could disagree that this theory is inconsistent with <u>Jackson</u>.  This potential for disagreement precludes this court from granting habeas relief on this claim.  *See* <u>Harrington</u>, 562 U.S. at 786 ("A state court's determination that a claim lacks merit precludes habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); *id.* (§ 2254(d) preserves the federal court's authority to issue the writ in cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents); *see also* <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1127 (11th Cir. 2012) (if, at a minimum, fairminded jurists could disagree about the correctness of the state court's decision, the state court's application of Supreme Court precedent was not unreasonable, and AEDPA precludes the grant of habeas relief) (citing <u>Harrington</u>, *supra*); <u>Johnson v. Sec'y, Dep't of Corr.</u>, 643 F.3d 907, 910 (11th Cir. 2011) (". . . only 'if there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents' may relief be granted.") (quoting <u>Harrington</u>, *supra*).

Petitioner failed to demonstrate that the state court's adjudication of his federal claim was contrary to or an unreasonable application of <u>Jackson</u>. Therefore, he is not entitled to federal habeas relief on Ground One.

> B.   <u>Ground Two: "Petitioner was denied effective assistance of counsel, and his right to testify during trial, where counsel advised Hardy not to testify on the premise the State would reveal the nature of prior conviction [sic] and that counsel would elicit his testimony in closing arguments."</u>

Though not included in the heading of Ground Two, Petitioner argues in support of this claim that defense counsel provided ineffective assistance at a pre-trial hearing on defense counsel's motion to suppress the search of Petitioner's vehicle (ECF No. 15 at 19–20).  Petitioner argues counsel was deficient for (1) failing to argue that the arresting officers lacked reasonable suspicion or probable cause to justify detaining Petitioner and searching him and his vehicle, (2) advising Petitioner not to testify during the suppression hearing, (3) failing to move for a continuance in order to secure the presence of Hugh Owens at the hearing, and (4) arguing inapplicable legal authority in support of the motion to suppress (*id.*).  Petitioner additionally contends defense counsel was ineffective for erroneously advising him that if he testified on his own behalf at trial, the nature of his prior offenses would be

revealed to the jury (*id.* at 7, 19–20). Petitioner alleges he "wanted to testify so badly to make sure that the truth come [sic] out." (*id.* at 7). He alleges defense counsel assured him that he (counsel) could present the information about which Petitioner wished to testify to the jury during closing arguments (*id.* at 19–20). Petitioner alleges that if he had known that counsel could not present the information to the jury, he would have testified in his own defense (*id.*).

Respondent concedes Petitioner exhausted these claims by presenting them to the state court in his amended Rule 3.850 motion (ECF No. 30 at 20). Respondent contends the state court adjudicated the merits of the claims, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 21–24).

### 1.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a

showing as to either performance or prejudice, Petitioner is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.

1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).   Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding would
> have been different. A reasonable probability is a probability sufficient
> to undermine confidence in the outcome.

*Id.* at 694.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

  2. <u>Federal Review of State Court Decision</u>

    a. <u>Counsel's performance with regard to motion to suppress</u>

The state court record demonstrates that defense counsel filed a pre-trial motion to suppress all evidence seized during the search of Petitioner's vehicle, and all statements made by Petitioner and Hugh Owens to law enforcement (Ex. A at 9–14). Counsel argued that the search of Petitioner's vehicle was illegal, because it was conducted without Petitioner's consent or a warrant, and there were no circumstances that necessitated the warrantless search. Counsel additionally argued that there was no competent substantial evidence that the articulated reason for the officers' detaining Petitioner and searching his vehicle, i.e., an odor of marijuana emanating

from Petitioner's car, was genuine.  Counsel argued that the officers' testimony regarding the existence of the odor was unreliable and contradictory, and thus insufficient to show they had probable cause to detain Petitioner and search his vehicle.

At the hearing on the motion to suppress, Deputy Rappa testified that the sheriff's office had received several complaints of drug activity in front of the Green Acres Store on Johnson Avenue (Ex. A at 18–33).  He testified that he observed two men in front of the store and made "citizen contact" with them.  Deputy Rappa testified that he asked the men for identification, and Hugh Owens produced a valid driver's license, but Petitioner stated he did not have any identification and just provided his name and date of birth.  Deputy Rappa testified that he asked the men for their consent to search their persons, and both men consented.  Rappa testified that Petitioner had a "Dodge or Chrysler key product" in his pocket.  Rappa testified that he asked Petitioner whether the Dodge car in front of which they were standing was his car, and Petitioner responded no.  Deputy Rappa testified that he returned the car key to Petitioner.  Rappa testified that he looked through the car window and observed a photo ID card with the last name Hardy on it.  Rappa testified that as he walked to the rear of the car to "run the tag," he noticed that the driver's side window was down

approximately four inches, and he smelled the odor of "raw" marijuana coming from the car.  Rappa testified that Petitioner and Hugh Owens were not free to leave at that point.  Deputy Rappa identified photographs of the car, which was a Dodge Stratus, and the photographs were admitted into evidence.  Rappa testified that he "ran" the car's license plate, and discovered that the car was registered to Petitioner and another person.  Rappa testified that Deputy Watkins was on the scene with his canine, so he asked Watkins to deploy the canine to check for narcotics.  Deputy Rappa testified that Watkins deployed the canine and advised that he received a positive alert on the driver's side door.  Rappa testified that he placed Petitioner and Mr. Owens in handcuffs, and he and Watkins searched the car, without Petitioner's consent.  Deputy Rappa testified that he and Watkins found two bags of crack cocaine and a digital scale in the center console, a bag in the glove compartment containing smaller bags of marijuana, and $988.34 in cash in the driver's side door panel.  Rappa testified that he advised Petitioner of his Miranda rights, and then inquired about the money and the drugs.  Deputy Rappa testified that Petitioner told him that the money was from an "old job," and that he was currently unemployed.  Rappa testified that Petitioner admitted that he knew that the drugs were in the car, but he denied that he owned them.  Deputy Rappa testified that Hugh Owens stated that he "flagged down"

Petitioner for a ride.  Rappa testified that Owens told him that when he entered

Petitioner's car, he smelled marijuana and assumed that Petitioner had smoked it prior

to Owens's entering the car.  Rappa testified that Owens denied any knowledge of

drugs in the car.

Deputy John Watkins testified that he also responded to the Green Acres

Convenience Store (Ex. A at 44–48).  He testified that the sheriff's office had received

numerous complaints of drug activity at the store.  Watkins testified that when he

arrived at the store, he observed two black males sitting on the windowsill of the store.

Watkins testified that he asked Hugh Owens for identification, and Owens presented

it.  Watkins testified that Mr. Owens consented to a search of his person, and Watkins

searched him.  Watkins testified that the search revealed nothing.  Deputy Watkins

testified that Deputy Rappa requested that Watkins run his canine around the vehicle,

because Rappa said he smelled marijuana coming from inside the car.  Watkins

testified that he did not smell marijuana, because he did not go around to the driver's

window area, where Rappa said he smelled it.  Watkins testified that Petitioner was

not free to leave at that point, even though he was not handcuffed or in the patrol car.

Watkins testified that he retrieved his canine from the patrol car, and ran the dog

around the car, starting at the rear passenger side, near the trunk.  Watkins testified

that the canine "scratch alerted" on the driver's side door.  Watkins testified that he opened the car door, and deployed the canine inside the car, at which time the dog "scratch alerted" on the center console.  Deputy Watkins testified that he opened the center console and observed an amount of crack cocaine.  He testified that he returned the dog to the patrol car, and then searched the car.  Watkins testified that he discovered marijuana inside the glove compartment.

Deputy Marc Dewees testified that he responded to the Green Acres Convenience Store when Deputy Rappa and Deputy Watkins were speaking to Petitioner and Hugh Owens (Ex. A at 33–41).  He testified that as he walked by the car parked in front of the store, he smelled an odor of "burnt" marijuana, like someone had smoked it, emanating from the driver's window, which was open approximately 3–4 inches.  Deputy Dewees testified that he did not smell "raw" marijuana from outside the car, but when the deputies searched the car, and Dewees collected the drugs and money from inside the car, Dewees smelled a "pretty strong" odor of "raw" marijuana.  Dewees testified that at the time the car was searched, Petitioner was in the rear of a patrol car.

Defense counsel filed the transcript of Hugh Owens's deposition (Ex. A at 50, 57).  Owens testified in his deposition that he did not recall whether the officers

searched Petitioner's person (Ex. I at 276–90).   Owens described the search of Petitioner's car as follows:

> Q.    Did law enforcement ever search the car?
>
> A.    Yes, they did.
>
> Q.    Okay.  How did that happen?
>
> A.    He like reached into the door and unlocked it and opened the door.
>
> Q.    When you say "he," it's the officer?
>
> A.    Yes, sir.
>
> Q.    Do you remember which officer did that?
>
> A.    I don't know his name.
>
> Q.    Okay.  Was the window down?
>
> A.    Yes, sir.
>
> Q.    Did he say anything while he was doing that?
>
> A.    No.  He just opened the door and closed it, and he ran a dog around it three times, and then that's when he like, oh, got all happy and stuff.
>
> Q.    Was the same officer who unlocked the car the officer that was handling the dog?
>
> A.    Yes, sir.

> Q.      Did you see what the dog did?
>
> A.      No, sir.

(Ex. I at 281–82).  When the prosecutor questioned Mr. Owens during his deposition, Owens testified that after the officer put his arm in the window of the car, the officer ran the dog around the car and then put the dog in the police car" (*id.* at 287).  Owens testified that when he first got into the car with Petitioner, he smelled marijuana (*id.* at 288–89).

Defense counsel also filed the transcript of Shelly Dill's deposition (Ex. A at 50, 57).  Ms. Dill was the crime scene technician who took photographs of the car after it was searched and the drugs and money were collected (*id.* at 57).  Ms. Dill testified that when she leaned inside the car to take photographs, she did not notice any unusual odors (*id.*).

The State argued that the odor of marijuana provided the officers with probable cause to detain Petitioner and search his vehicle (Ex. A at 52, 61–62).  The State argued that even Hugh Owens stated in his deposition that he smelled marijuana when he got into Petitioner's car before they arrived at the store, which corroborated the testimony of Deputy Rappa and Deputy Dewees (*id.*).

Defense counsel argued that the officers should have obtained a warrant prior to searching Petitioner's vehicle, because they did not have Petitioner's consent, and there were no circumstances justifying the warrantless search (Ex. A at 52–61). Defense counsel also argued that the conflict in the officers' testimony regarding the smell of marijuana (i.e., Deputy Rappa stating that he smelled "raw" marijuana from the window, Deputy Dewees stating he smelled "burnt" marijuana from the window, and Shelly Dill stating in her deposition that she did not smell any marijuana when she photographed the car) suggested that their reason for the search was fabricated and pre-textual (*id.* at 57–58, 63–64).   Defense counsel argued that legal precedent demonstrated that the Supreme Court did not envision the Fourth Amendment to permit officers to conduct warrantless searches of vehicles under the circumstances presented in Petitioner's case (*id.* at 52–60).

The trial court denied the motion to suppress on the ground that the officers' smelling marijuana from the open window of the car provided reasonable suspicion to detain Petitioner and deploy the canine; and the canine's "alerting" on the car provided the officers with probable cause to search it (Ex. A at 63–64, 67).

In Petitioner's amended Rule 3.850 motion, he raised the same claims that he now raises in Ground Two of his § 2254 petition (Ex. H at 74–99). The state circuit court held an evidentiary hearing on these claims (*id.* at 134–93).

At the post-conviction evidentiary hearing, Petitioner testified that he would have provided the following testimony at the suppression hearing:

> THE COURT:  All right.  So what would you have testified to if you would have testified?
>
> THE DEFENDANT:  . . . . That it was never [sic] no smell [sic] of no marijuana [sic].  Two, that this officer, the K-9 officer that said he didn't smell any marijuana, he went in the car before he even got the dog out.  And I say that I was—from the time that they stepped to me [sic], I was being interrogated.  Officers interrogated me.  They was question [sic]— I never felt free to leave.  They said that I never asked or something, but I never all [sic]—everything was just mere allegation.  I consented to a search of my person.  I did not consent to no search [sic] of my person ever.  I was told to put my hands on the wall, and that's what I did, because I felt like I was obligated to do so.  And then the officer said that he found the key in my pocket.  He didn't even pay no attention [sic] to that key because it wasn't—for one, it wasn't no [sic] contraband.  Two, the officer, the K-9 officer, like I'm telling you, while I was getting patted down that officer was already in that vehicle.  The K-9 officer was already in that vehicle.

(Ex. H at 141–42).  On cross-examination, Petitioner summarized that if he had testified at the suppression hearing, he would have (1) contradicted the officers' testimony that there was an odor of marijuana emanating from the car, (2) contradicted the officers' testimony that they did not enter the car until after they deployed the

canine, and (3) contradicted Deputy Rappa's testimony that Petitioner consented to the search of his person (*id.* at 152–53).  Additionally, Petitioner testified that defense counsel never advised him that he could testify at the suppression hearing (*id.* at 151). With regard to defense counsel's legal argument at the suppression hearing, Petitioner asserted that defense counsel should have argued that the officers' testimony regarding the odor of marijuana was contradictory and unsupported by any physical evidence; therefore, it was unreliable, unbelievable, and insufficient to support a probable cause determination (*id.* at 140–41).  He additionally contended defense counsel should have argued that the officers' initial contact with him was illegal; therefore, the subsequent search of the vehicle was also illegal.

Both William Nelson and Michael Griffith represented Petitioner at the suppression hearing (*see* Ex. H at 154–55).  At the post-conviction evidentiary hearing, Attorney Nelson testified that he and Attorney Griffith presented the theory that there was no odor of marijuana to justify the search, and the conflict in the officers' testimony supported that theory (*id.* at 157).  Nelson testified that he remembered discussing with Petitioner during the suppression hearing that Petitioner had the option of testifying, and advising Petitioner that there were potential benefits and risks with his testifying  (*id.* at 156).  Nelson testified that one of the risks of

Petitioner's testifying was that his testimony could potentially be used to impeach him if he testified at trial (*id.* at 157–58). Additionally, the State would have a tactical advantage of knowing the content of Petitioner's potential trial testimony (*id.*). Attorney Nelson testified that he and Petitioner discussed the content of Petitioner's potential testimony (including everything that Petitioner mentioned at the post-conviction evidentiary hearing), and they concluded that his testimony would not add a great deal, and that the risk was greater than the potential contribution (*id.* at 159, 161–62). Nelson testified that at the conclusion of their discussion, Petitioner indicated that he did not wish to testify (*id.* at 157).

The circuit court adjudicated Petitioner's post-conviction claims in a written order (Ex. I). The state court correctly identified <u>Strickland</u> as the applicable legal standard (*id.* at 195–96). The court adjudicated Petitioner's claims concerning defense counsel's performance at the suppression hearing as follows:

> Defendant raises several sub-claims under his first ground, all premised on his statement of facts regarding the events leading to his arrest. Defendant states that he and Hugh Owens had placed an order for food at a convenience store and were waiting in front of the store for their orders to be completed. While there, Defendant asserts that three Escambia County Sheriff's Office (ECSO) deputies arrived and parked in such a way as to block his vehicle from moving. Defendant states that he denied ownership of the Dodge Stratus in question, and was ordered to place his hands on the wall for a weapons pat-down. Defendant states that he did not consent to this order, but complied, feeling that he "had

no choice."  Defendant further states that Deputy Scott Rappa reached into his pocket without his consent, following the patdown [sic], and removed a "Chrysler products ignition key."  When Deputy Rappa walked to the rear of the car to run the tag, Defendant asserts that "he alleged to have detected the odor of raw marijuana" and to "have visually observed a Florida Department of Corrections Identification Card bearing the last name Hardy lying in plain view on the console of the vehicle."  Upon learning that Defendant was co-owner of the vehicle, Deputy Rappa then asked Deputy Watkins to have his K-9 do an exterior "sniff search."  According to Defendant, the K-9 did not alert on the initial circuit, but did alert when Deputy Watkins tapped the driver's side keyhole.  After being placed inside the vehicle, the K-9 alerted to the center console.  The vehicle was searched, and approximately 14 grams of crack cocaine was found in the center console, along with a set of scales.  A bag containing several smaller sealed "baggies" of marijuana was discovered in the passenger side glove compartment.  The deputies also found approximately $988 in the driver's side door pocket, and a box of sandwich bags in the back seat. Defendant further asserts that the crime scene officer who took pictures of the interior of the vehicle, Shelly Dill, stated in deposition that she could not smell the odor of marijuana, and that the other officers involved offered conflicting testimony about the nature of the odor.

Based on this set of facts presented, Defendant raises four sub-claims.  First, he asserts that his counsel was ineffective at his suppression hearing for failing to argue that the arresting officers lacked a well-founded suspicion or probable cause, prior to the detention and personal search of Defendant and his vehicle.  Second, he claims that his counsel was ineffective for failing to advise him that he could testify on his own behalf at the suppression hearing.  Third, he asserts that counsel was deficient for failing to move for a continuance in order to secure the presence of witness Hugh Owens to "truthfully testify" to the events that transpired during the "alleged consensual encounter" leading to the search of Defendant's vehicle.  Fourth, he states that his counsel was deficient for arguing "wholly inapplicable decisional authority" in support of suppression.

Failure to argue that the officers lacked a well-founded suspicion or
probable cause

and

Failure to advise correctly regarding testimony at suppression hearing

Based on the above statement of facts, Defendant states that his
counsel was ineffective for failing to argue that the initial encounter with
the police officers was illegal, and therefore that the evidence obtained
from the car should be suppressed.  Defendant further asserts that his
counsel never advised him he had a right to testify at the suppression
hearing, and that, as a result, he was "completely unaware" that he could
testify at that hearing.  Had he known the option was available, he
alleges he would have testified to the facts as outlined above, and, had
the Court heard his testimony and been given the opportunity to judge
his demeanor, the "Court would have viewed [his] testimony favorably."

As an initial matter, it does not appear that Defendant's theory of
suppression would have been successful.  As pointed out by the State in
its response to the order to show cause, the officers testified that the odor
of marijuana was detected emanating from Defendant's vehicle, which
was parked in a public parking lot with the window open.  The Court
found this testimony to be credible at the hearing on the motion to
suppress.  Even if the Court assumes that Defendant's statement of facts
regarding his lack of consent and illegal detention are true, it does not
necessarily follow that the search of the car is rendered illegal.
Furthermore, it must be noted that Defendant would have had to testify
to the facts upon which his theory of suppression is based.  As noted
infra, Defendant's counsel was aware of Defendant's version of events,
and felt that having Defendant testify at the suppression hearing would
do more harm than good.  The Court does not find that the approach
pursued by counsel was unreasonable.[FN 4]  Defendant is not entitled
to relief on this basis.

[FN 4:  See Attachment 2, motion to suppress; see also Attachment 3, transcript, motion to suppress hearing.]

Petitioner's counsel, William Nelson,[FN 5] testified at [the] evidentiary hearing with regard to Defendant's claim that he did not realize he could testify at the suppression hearing.  Mr. Nelson testified that he spoke with Defendant about the possibility of testifying, and that he remembered "discussing with him whether or not he wanted to testify . . . and advising him that there would be some potential benefits but also that there would be some risk to doing so."  Mr. Nelson further testified that he was aware of Defendant's assertions regarding the lack of consent and the other factors which Defendant wished to bring out, but that he still felt, on balance, that Defendant's testimony would have been more detrimental than beneficial.  Defendant has failed to demonstrate that his counsel performed deficiently, as the Court finds credible Mr. Nelson's testimony that he did in fact discuss with Defendant the possibility of testifying at the suppression hearing.  The Court further concludes that counsel, being advised of Defendant's version of events, made a strategic recommendation to Defendant not to testify, a recommendation which this Court does not find unreasonable.  Defendant has failed to show deficient performance, and he is not entitled to relief on this basis.

[FN 5:  Defendant was represented by both Mr. Nelson and Michael Griffith during the course of his proceedings.]

   Failure to move for a continuance to secure the testimony of Hugh Owens

As acknowledged by Defendant, the deposition testimony of Hugh Owens was admitted at the suppression hearing.  Defendant argues that, had Owens been called to testify in person, he would have "clarified that the odor of marijuana was faint and had disappeared by the time he and Hardy arrived at the store."  He further argues that Owens would have testified that neither he nor Hardy were smoking marijuana, and that Deputy Rappa "immediately and aggressively focused his attention on Defendant," and that he reached into Defendant's pocket without his

consent.  He also states that Owens would have testified that Deputy
Watkins briefly rummaged through the vehicle while Defendant was
being patted down, without mentioning any smell, and also that the K-9
made at least one full circuit around the car and did not alert until Deputy
Watkins tapped on the keyhole. Defendant alleges that had the Court
"been afforded an opportunity to examine Owens' demeanor while
testifying consistently with Hardy's version of events, it is quite
reasonable that she would have found Hardy and Owens to be more
credible in regards to the circumstances surrounding the search and arrest
of Hardy," and that "she would have found that the initial encounter was
illegal and the alleged odor was not present."

        The record largely refutes Defendant's allegations with regard to
the substance of Mr. Owens's potential testimony.  In deposition,[FN 6]
Mr. Owens seemed to remember few details of the incident, and in fact,
said that the officers did not search Defendant's person.  Mr. Owens did
acknowledge that he noticed an odor of marijuana in the vehicle when
he was picked up by Defendant.  Based on the deposition, it does not
appear that Mr. Owens would have been able to testify in the manner in
which Defendant alleges.  He is not entitled to relief on this basis.

        [FN 6:  Mr. Owens' deposition was admitted at the motion
        to suppress hearing.    See  Attachment 4, deposition
        transcript.]

        Counsel's presentation of "inapplicable decisional authority"

        In his next claim, Defendant argues that his counsel was
ineffective for arguing the application of Arizona v. Gant, 556 U.S. 332,
129 S. Ct. 1710 (2009), because the case "does not apply to situations
concerning probable cause or an illegal detention.  It applies to vehicle
searches incident to an arrest."  Defendant argues that had counsel acted
effectively, "he would have presented applicable decisional authority on
the subject and focused his argument primarily on the illegal nature of
the initial, unwarranted detention," resulting in the suppression of the
evidence.

As noted previously, it is not at all clear that the pursuit of the strategy advocated by Defendant would have been successful. Additionally, it appears to have been deliberately foregone by counsel in favor of the arguments ultimately presented in Defendant's motion to suppress, based largely on counsel's belief that having Defendant testify would be more harmful than beneficial.  Therefore, while counsel may have argued case law which ultimately was considered inapplicable by the Court, Defendant cannot demonstrate that he was prejudiced as a result.  The Court was not limited in its consideration of case law to only that presented by counsel, and the Court does not find that the arguments made by counsel were unreasonable.  On the contrary, it appears to the Court that the motion to suppress, although ultimately unsuccessful, was well thought out and well-presented.  Defendant is not entitled to relief on this basis.

(Ex. I at 196–202).  Petitioner argued all of these issues in his initial brief on appeal of the circuit court's decision (Ex. J).  The First DCA affirmed the lower court's decision without written opinion (Ex. M).

Where, as here, a state court makes a factual finding that counsel strategically decided not to pursue a certain line of defense, that finding is entitled to a presumption of correctness under § 2254(e)(1).  *See* <u>Fotopoulos v. Sec'y Dep't of Corr.</u>, 516 F.3d 1229, 1233 (11th Cir. 2008).

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Strickland, 466 U.S. at 690–91.  Thus, "trial counsel has not performed deficiently when a reasonable lawyer could have decided, under the circumstances, not to investigate or present particular evidence."  Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001); *see also* Wiggins v. Smith, 539 U.S. 410, 523, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) ("[O]ur principal concern . . . is not whether counsel should have presented a mitigation case.  Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the petitioner's] background was itself reasonable.") (emphasis omitted).

In reviewing an attorney's professional judgments, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  Indeed, as discussed *supra*, the federal court's standard is a high one—"[e]ven if many reasonable lawyers would not have done as defense counsel did . . ., no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers, 13 F.3d at 386; Chandler, 218 F.3d at 1315 ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Reasonableness is assessed objectively, measured "under prevailing professional norms," Strickland, 466 U.S. at 688, and includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time," id. at 689; see also Hannon v. Sec'y, Dep't of Corr., 562 F.3d 1146, 1151 (11th Cir. 2009) ("The standard we apply in assessing the first prong is that of a reasonable attorney, not a paragon of the bar."); Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999) ("'[I]n retrospect, one may always identify shortcomings,' but perfection is not the standard of effective assistance."); Atkins v. Singletary, 965 F.2d 952, 958, 960 (11th Cir. 1992) ("Most important, we must avoid second-guessing counsel's performance. . . .  Nothing is so easy as to be wise after the event. . . .  A lawyer can almost always do something more in every case.  But the Constitution requires a good deal less than maximum performance.").  As the Eleventh Circuit said:

> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. . . .  The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight.

Chandler, 218 F.3d at 1316–17 (quotations and citation omitted).  In other words, federal habeas courts recognize that "the trial lawyers, in every case, could have done

something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled." *Id.* at 1313 (quotations omitted).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788.

As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

Here, the state court found Attorney Nelson's testimony at the post-conviction evidentiary hearing credible. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th  Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."). Questions of the credibility and demeanor of a witness are questions of fact.  *See*

Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e).

Petitioner has not overcome the presumption of correctness with clear and convincing evidence.  Therefore, this federal court must defer to the state court's finding that Attorney Nelson's testimony at the evidentiary hearing was credible. According to Nelson, he and Petitioner discussed the content of Petitioner's potential testimony, they concluded that his testimony would not add a great deal, and that the risk was greater than the potential contribution, and at the conclusion of their discussion, Petitioner indicated he did not wish to testify.  Based upon these facts, the state court reasonably rejected Petitioner's claims that counsel failed to advise him of his right to testify at the suppression hearing, and that counsel was ineffective for failing to present Petitioner's testimony.

Additionally, the state court reasonably determined that defense counsel's strategy with regard to the suppression issue was reasonable.  "The Fourth Amendment to the United States Constitution protects the right of persons to be free

from unreasonable searches and seizures."  United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).  Evidence that is uncovered as the result of an unreasonable search or seizure must be suppressed as "fruit of the poisonous tree."  *See* Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).  "There are three broad categories of police-citizen encounters for purposes of our Fourth Amendment analysis:  (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006); Popple v. State, 626 So. 2d 185, 186 (Fla. 1993).

The first category, and applicable here—police-citizen encounters—does not implicate the Fourth Amendment.  Perez, 443 F.3d at 777; Popple, 626 So. 2d at 186 (citing United States v. Mendenhall, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).  "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002).  Thus, "[o]fficers are free, without any level of suspicion, to approach citizens on the street or in a public place."  Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006).

As for the vehicle search, probable cause "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007). An officer's detecting an odor of marijuana emanating from a vehicle provides the officer with probable cause to search the vehicle. See Merricks v. Adkisson, 785 F.3d 553, 560 n.3 (11th Cir. 2015); United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc) ("There is no doubt that the agent's suspicions rose to the level of probable cause when . . . he detected what he knew from his law enforcement experience to be the odor of marijuana."); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982) ("At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed . . . arose."); see also, e.g., United States v. Johnson, 445 F. App'x 311, 313 (11th Cir. 2011) (unpublished but recognized for persuasive authority) (district court did not clearly err in crediting police officer's testimony that he was familiar with the odor of raw marijuana and smelled it when he removed defendant's passenger from defendant's car, despite a defense expert's testimony that it would have been "next to impossible" for an officer to smell the marijuana inside a bag in the trunk of the car; because there was nothing inherently

unbelievable about the officer's testimony; officer's detecting odor of marijuana gave rise to probable cause supporting warrantless search of the car).

Based upon the evidence in Petitioner's case, defense counsel reasonably pursued a strategy of arguing that the conflict in the officers' testimony regarding the smell of marijuana—that is, Deputy Rappa stating that he smelled "raw" marijuana from the window, Deputy Watkins stating he did not smell marijuana, Deputy Dewees stating he smelled "burnt" marijuana from the window, and Shelly Dill stating in her deposition that she did not smell any marijuana when she photographed the car—suggested that the articulated reason for the search was fabricated and pre-textual; therefore, the officers had no legal basis to search Petitioner's, and any evidence discovered as a result of the search was thus inadmissible.

To the extent Petitioner argues that defense counsel also should have challenged the legality of the officers' approaching him, questioning him about his identity and ownership of the car, and patting him down, counsel's failure to pursue this theory was reasonable.  The deputies' initial encounter with Petitioner and Hugh Owens fell into the first category of police-citizen encounters:  the deputies approached the men and asked if they would provide identification and consent to a search, and the men voluntarily complied.  Indeed, Petitioner admitted to the trial court at sentencing that

he "allowed" Deputy Rappa to search him (*see* Ex. A at 141).  As the Eleventh Circuit and the Florida Supreme Court have recognized, constitutional safeguards are not invoked during such an encounter.  *See* <u>Perez</u>, 443 F.3d at 777; <u>Popple</u>, 626 So. 2d at 186.  Further, the record includes Petitioner's admissions that he "complied with" and "allowed" the pat-down.  Therefore, defense counsel's failure to pursue this additional strategy was reasonable.

With regard to counsel's failure to present testimony from Hugh Owens, as previously noted, defense counsel presented Owens's testimony by admitting the transcript of his deposition into evidence at the suppression hearing (*see* Ex. A at 50, 57).  Petitioner failed to show a reasonable probability of a different outcome at the suppression hearing if defense counsel had presented live testimony from Hugh Owens, instead of the deposition testimony of Owens.[9]  Therefore, Petitioner failed to establish counsel was ineffective in this regard.

---

[9] Although the record of Petitioner's <u>second</u> Rule 3.850 proceeding includes an affidavit of Hugh Owens, executed on January 28, 2013, stating that he never smelled marijuana inside the car (*see* Ex. P at 9–10), that affidavit was not presented to the state court in the <u>first</u> Rule 3.850 proceeding.  In evaluating the state court's adjudication of Petitioner's claim, this federal court may consider only the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2). Additionally, even if Hugh Owens would have testified at the suppression hearing consistently with his affidavit, the prosecutor would have impeached his testimony with the prior inconsistent statement in his deposition.  Therefore, Petitioner failed to demonstrate a reasonable probability of a different outcome at the suppression hearing if Hugh Owens had testified in person.

Petitioner failed to demonstrate that the state court's adjudication of his ineffective assistance of trial counsel ("IATC") claims, with regard to counsel's performance at the suppression hearing, was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to relief on this part of Ground Two.

> b.   <u>Counsel's performance with regard to Petitioner's right to testify at trial</u>

In Ground 2 of Petitioner's amended Rule 3.850 motion, he contended defense counsel interfered with his constitutional right to testify at trial, by erroneously advising him that the State would reveal the nature of Petitioner's prior convictions to the jury, and that defense counsel could present Petitioner's testimony during closing arguments (Ex. H at 95–99).

Attorney Michael Griffith testified at the post-conviction evidentiary hearing (Ex. H at 162–88).  He testified that he had been practicing law, including criminal defense, for nearly thirty-five years at the time of Petitioner's trial in 2009 (*id.* at 163).  Attorney Griffith testified that he and Petitioner discussed whether or not Petitioner should testify at trial (*id.*).  He testified that the subject was broached "on several occasions," and the decision was not made until the conclusion of the State's case (*id.* at 165).  Attorney Griffith testified:

Case 3:14-cv-00144-MCR-EMT   Document 39   Filed 03/01/16   Page 57 of 106

You always talk about what the negative of someone's testimony is and what the positive is.  And you say this can happen or that can happen.  If a person has prior convictions the State can ask you about your convictions.  And if you have convictions, they can then ask you how many you've got.  That's something the jury is going to know and the jury takes into consideration generally in determining your credibility.  That's the kind of thing you talk about.

. . . .

And what he was told and what every client—what I tell every client is the State Attorney's Office has to have a certified copy of your prior conviction.  If you have—they will ask you the following question, Have, you ever been convicted of a crime?  If you have been you have to answer yes.  They can then ask you how many times, and we'll know—you know how many times you were previously convicted?  Then your answer has to be correct, one time, two times.  If you give a false answer to that, they can bring up your convictions and question you about the conviction and the date.

(*id.* at 165–66).

When asked whether he advised Petitioner that he could "get in" Petitioner's side of the story during closing argument, Attorney Griffith testified no (Ex. H at 167).  Griffith testified that he told Petitioner that he (Griffith) would tell the jury during closing argument that Petitioner denied the charges, and that he would "push" his closing argument as much as he could (*id.* at 187–88).  Griffith testified that he told Petitioner that he would use Shelly Dill's testimony (the crime scene technician), that she did not smell marijuana in Petitioner's car, to vehemently argue that the police were lying (*id.* at 168).

Attorney Griffith testified that Petitioner made the decision not to testify (Ex. H at 168).  He testified that he tells his clients that prosecutors are trained, and have a lot of experience in "tripping people up" and asking questions, and that most defendants are not comfortable testifying because it is a new environment, and they must be very careful that they do not get "tripped up" when they testify (*id.*).  Griffith testified that he advises his clients, including Petitioner, that the "pro" of his testifying was that the jury often wants to hear what the defendant has to say (*id.*).  However, the "cons" to his testifying were that the defendant may say something that is taken out of context or argued against them during closing argument (*id.*).  Additionally, if the defendant does not testify, the jury does not know if he has a prior criminal record, but if the defendant has prior convictions and testifies, the jury is going to know if he has a felony conviction or was convicted of a crime involving dishonesty or a false statement (*id.* at 168–69).

Attorney Griffith testified that he advised Petitioner that the decision whether to testify was ultimately Petitioner's (Ex. H at 168).  He testified that Petitioner "went back and forth" on the issue of whether to testify, and ultimately decided not to testify (*id.* at 169–70, 183, 186–87).

The state court adjudicated this IATC claim as follows:

In his second ground, Defendant argues that he was denied effective assistance of counsel and his right to testify at trial because counsel advised him that the "State would reveal the nature of his prior convictions and that counsel could elicit his testimony in closing arguments."

Defendant states that be told his counsel that he wished to testify at trial.  He states that counsel informed him that the "State would reveal the nature of his prior convictions" if he testified, and that he also told him that he need not testify because "he could elicit [his] testimony during closing arguments."  Based on this, Defendant alleges, he waived his right to testify in his defense.  Had he testified, he states, he would have told the jury, among other things, that he never confessed, that there was no odor, and that other family members shared the vehicle in question and that his brother had used the vehicle shortly before he was arrested.

Although the Court conducted a thorough colloquy with Defendant at trial regarding his right to testify, the claims alleged by Defendant were not specifically addressed.[FN 7]  Defendant did not testify at [the] evidentiary hearing that he was misadvised regarding the State's ability to impeach him with the nature of his prior convictions. However, in an abundance of caution, Defendant's trial counsel, Michael Griffith, testified as to this point at [the] evidentiary hearing.  Mr. Griffith testified as follows:

> What I tell every client is the State Attorney's Office has to have a certified copy of your prior conviction.  If you have—they will ask you the following question, Have you ever been convicted of a crime?  If you have been you have to answer yes.  They can then ask you how many times, and we'll know—you know how many times you were previously convicted?  Then your answer has to be correct, one time, two times.  If you give a false answer to that, they can bring up your convictions and question you about the conviction and the date.

[FN 7:  <u>See</u> Attachment 5, trial transcript excerpts, pages 118–124.]

Mr. Griffith further testified that Defendant was properly advised as such, and that he made the decision not to testify at trial, although he "went back and forth . . . [H]e wanted to testify then he didn't want to testify."  With regard to Defendant's assertion that his counsel told him he could "elicit his testimony on closing arguments," Mr. Griffith denied the allegation, saying, "I told him that I would tell the jury that he denied the charges brought against him, and I would push my argument as much as I could ethically push it 'cause I do that all the time, I get objected to all the time."  The Court finds the testimony of Mr. Griffith credible as to these points, and concludes that Defendant has failed to demonstrate deficient performance.  He is not entitled to relief on this basis.

[FN 8:  The trial transcript supports defense counsel's statement of what occurred during closing arguments.  <u>See</u> Attachment 5, trial transcript excerpts, pages 150–156.]

(Ex. I at 202–03).

The state court found Attorney Griffith's testimony credible with regard to the advice he gave Petitioner regarding testifying on his own behalf.  Petitioner has failed to rebut that finding with clear and convincing evidence; therefore, this court defers to the state court's credibility finding.  Additionally, the state court found as fact that at the evidentiary hearing Petitioner did not testify that defense counsel misadvised him regarding the State's ability to impeach him with the nature of his prior convictions.  In light of the state court's factual findings, Petitioner failed to demonstrate that the state court's adjudication of his IATC claim concerning counsel's

performance with regard to advising Petitioner about his right to testify, was contrary to or an unreasonable application of Strickland.  Therefore, Petitioner is not entitled to federal habeas relief on this IATC claim.

    C.    Ground Three: "Petitioner was denied effective assistance of counsel, and my right to cross-examine during trial, where counsel failed to call Hugh Owens."

Petitioner alleges Hugh Owens would have testified that neither he nor Petitioner smoked marijuana in Petitioner's car (ECF No. 15 at 8, 20–21).  Petitioner alleges Owens also would have testified that when he (Owens) entered Petitioner's car, there was a faint odor of marijuana, but the odor disappeared by the time they reached the convenience store (*id.*).  Petitioner contends the outcome of trial would have been different if defense counsel had presented this testimony from Hugh Owens (*id.*).

Respondent concedes that Petitioner exhausted this claim by presenting it in his amended Rule 3.850 motion (ECF No. 30 at 25).  Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 25–28).

    1.    Clearly Established Federal Law

The <u>Strickland</u> standard is the clearly established federal law applicable to this claim.

### 2.   Federal Review of State Court Decision

Petitioner raised this claim as Ground 3 in his amended Rule 3.850 motion (Ex. H at 99–102).  The state circuit court denied the claim on the following grounds:

> In his third ground, Defendant states that his counsel was ineffective for failing to call Hugh Owens to testify on his behalf. Defendant argues that had he been called, Owens would have testified that neither he nor Defendant was smoking marijuana in the vehicle, that when he initially entered the vehicle that there was a faint odor of marijuana, and that there was no odor of marijuana in the vehicle at the time he and Defendant arrived at the store.[FN 9]

> > [FN 9:  Defendant asserts in his heading for this claim that he was denied his right to "cross examine."  The Court notes that, had the defense called Mr. Owens as a defense witness, Defendant would have had no opportunity to "cross examine" Mr. Owens.]

> Even assuming Mr. Owens would have testified at trial as outlined by Defendant in this claim, the Court cannot conclude that Defendant was prejudiced by counsel's failure to call Mr. Owens, or that defense counsel was deficient.  Although Mr. Owens may have testified that the odor departed by the time he and Defendant arrived at the store, the fact remains that Mr. Owens did testify at deposition that an odor of marijuana was present in the car at some point (as Defendant acknowledges).  It appears to this Court that such testimony could have been damaging to Defendant's case, despite Defendant's assertion that Mr. Owens' testimony would have been beneficial.  Furthermore, defense counsel relied heavily, and wisely so, on the testimony of a State's witness, crime scene technician Shelly Dill, that she did not smell

marijuana in the vehicle.[FN 10]   Additionally, counsel made some effort to shift blame for the drugs to Hugh Owens during his closing argument, an effort which would likely have been more difficult had Mr. Owens testified.[FN 11].  The Court finds that Defendant is not entitled to relief on the basis of this claim.

> [FN 10:  See Attachment 5, trial transcript excerpts, pages 96–105; 157–166.]

> [FN 11:  See Attachment 5, trial transcript excerpts, pages 160, 164.]

(Ex. I at 204–05).  Petitioner raised this issue on appeal of the circuit court's decision (Ex. J).  The First DCA affirmed the lower court's decision without written opinion (Ex. M).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."   Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).

In the state post-conviction proceeding, the only evidence of the content of Hugh Owens' potential trial testimony was the transcript of his deposition taken on April 16, 2009 (Ex. I at 276–92).  In Owens' deposition, he testified that when he got into Petitioner's car, he smelled marijuana, but he did not know where the smell came from (*id.* at 288–89).  There was no evidence that Owens would have testified that the smell of marijuana disappeared by the time he and Petitioner arrived at the convenience store.[10]  Therefore, the state court reasonably concluded that Petitioner failed to demonstrate that the outcome of trial would have been different if defense counsel had presented Hugh Owens' testimony.

Petitioner failed to show that the First DCA's adjudication of this IATC claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to relief on Ground Three.

D.    Ground Four: "Counsel was ineffective for failing to challenge canine's credibility where there was overwhelming evidence of officers lacking probable cause to entertain the notion to deploy canine for exterior search of Petitioner's

---

[10] As discussed *supra* in Ground Two, although the record of Petitioner's second Rule 3.850 proceeding includes an affidavit of Hugh Owens, executed on January 28, 2013, stating that he never smelled marijuana inside the car (*see* Ex. P at 9–10), that affidavit was not presented to the state court in the first Rule 3.850 proceeding.  In evaluating the state court's adjudication of Petitioner's claim, this federal court may consider only the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).  Additionally, even if Hugh Owens would have testified at trial consistently with his affidavit, the prosecutor would have impeached his testimony with the prior inconsistent statement in his deposition.  Therefore, Petitioner failed to demonstrate a reasonable probability of a different outcome at trial if Hugh Owens had testified.

vehicle.  Officer relied solely on positive alert received from canine to validate the warrantless search conduct."

Petitioner contends defense counsel was ineffective for failing to challenge the reliability of the canine's alert to drugs in the car (ECF No. 15 at 10, 21–22). Petitioner argues that the canine's alert was unreliable, because it could have been triggered by seeing its handler reach into the car and unlock the door, and not the smell of drugs.  Petitioner argues that another indication of unreliability was the fact that the canine did not alert to the smell of marijuana until the dog had circled the car three times, whereas two officers testified that they immediately smelled marijuana emanating from the car, and another officer and a crime scene analyst testified that neither of them smelled marijuana.  Petitioner contends if counsel had challenged the reliability of the canine's alert, there is a possibility that the court would have ruled that the alert was insufficient to supply probable cause for the search of the vehicle.

Respondent asserts Petitioner presented this claim to the state courts in his amended Rule 3.850 motion (ECF No. 30 at 29).  Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 29–31).

1.   Clearly Established Federal Law

The <u>Strickland</u> standard is the clearly established federal law applicable to this claim.

2.      <u>Federal Review of State Court Decision</u>

Petitioner presented this claim to the state court in Ground 4 of his amended Rule 3.850 motion (Ex. H at 102–03).  The state circuit court adjudicated the claim as follows:

> In his fourth ground, Defendant asserts that counsel was ineffective for failing to challenge the canine's "credibility" where "there was overwhelming evidence of officers lacking probable cause to entertain the notion to deploy canine for exterior search of Defendant's vehicle."  Defendant argues that had counsel "challenged the dog's credibility, there is the possibility, the court would have ruled the dog's alert was insufficient to supply probable cause."
>
> As pointed out by the State in its response to the Court's order to show cause, it does not appear that the search was predicated on the K-9 alert; rather the basis for the search of the vehicle was the odor of marijuana emanating from the car.[FN 12]  Consequently, counsel cannot be deemed ineffective for failing to challenge the "credibility" of the K-9 officer, as it does not appear that a reasonable probability exists that such a challenge would have rendered a different result.  Defendant is not entitled to relief on this basis.
>
> [FN 12:  <u>See</u> Attachment 3, motion to suppress transcript, pages 49–50.]

(Ex. I at 205).  Petitioner raised this issue on appeal of the circuit court's decision (Ex. J).  The First DCA affirmed the lower court's decision without written opinion (Ex. M).

As discussed *supra* in Ground Two, the deputies had probable cause to search Petitioner's car based solely upon the odor of marijuana, even before they deployed the canine.  *See* Merricks, 785 F.3d at 560 n.3; Tobin, 923 F.2d at 1512; Lueck, 678 F.2d at 903.  Therefore, Petitioner failed to show a reasonable probability of a different outcome if defense counsel had challenged the reliability of the canine alert.

Petitioner failed to demonstrate that the First DCA's adjudication of his IATC claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to relief on Ground Four.

E.      Ground Five:  "Petitioner's appellate counsel was ineffective for failing to raise on appeal the trial court's denial of the motion to suppress on July 2, 2009."

Petitioner contends appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by denying the defense's motion to suppress (ECF No. 15 at 13, 22–24).  Petitioner contends the issue was "a dead bang winner" (*id.* at 13).

Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his state habeas petition alleging ineffective assistance of appellate counsel (ECF No. 30 at 31).  Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 32–36).

### 1.    Clearly Established Federal Law

The standard for evaluating a claim of ineffective assistance of appellate counsel is the standard set forth in Strickland.  *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 746 (2000) (citation omitted).  As previously discussed, the two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697.  The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was "reasonable considering all the circumstances."  *Id.* at 691.

Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal.  Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct.

3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal.  *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Additionally, where an issue is not preserved for appellate review, appellate counsel's failure to raise the issue is not constitutionally deficient as it is based on the reasonable conclusion that the appellate court will not hear the issue on its merits. Diaz v. Sec'y Dep't of Corrs., 402 F.3d 1136, 1142 (11th Cir. 2005); Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992); Francois v. Wainwright, 741 F.2d 1275, 1285–86 (11th Cir. 1984).  Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal.

Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.   Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of appellate counsel ("IAAC") as Ground One of his state habeas petition (Ex. N at 2–4). The First DCA denied the claim on the merits without a written explanation of its ruling (Ex. O).

The First DCA's rejection of Petitioner's IAAC claim could have been supported by the theory that appellate counsel's failure to brief the suppression issue was reasonable. The trial court's decision to deny the motion to suppress would have come to the appellate court cloaked with a presumption that its factual findings were correct, but the appellate court would have applied a de novo standard of review to legal issues and mixed questions of law and fact. See Smithers v. State, 826 So.2d 916, 924–25 (Fla. 2002).

Here, the trial court found as fact that the officers credibly testified that they detected an odor of marijuana emanating from Petitioner's car. This finding would have been entitled to a presumption of correctness on appeal. Given this finding, the appellate court would have had no basis to reverse the trial court's legal conclusion that the officers had probable cause to search Petitioner's car. Therefore, the First

DCA's determination, that Petitioner failed to demonstrate that appellate counsel was ineffective for failing to argue the suppression issue, was reasonable.  Accordingly, Petitioner is not entitled to relief on Ground Five.

> F.    Ground Six:   "Petitioner's appellate counsel was constitutionally ineffective for failing to raise trial court erred [sic] in the admission of the drug and paraphanalia [sic] into evidence."

Petitioner asserts appellate counsel should have argued on appeal that the trial court erred by admitting into evidence the drugs and paraphernalia seized from Petitioner's car (ECF No. 15 at 13, 24).  Petitioner contends counsel should have argued that the items were improperly admitted, because they were fruits of the officers' illegal search of the car.

Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his state habeas petition (ECF No. 30 at 36–37).  Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 37–41).

> 1.    Clearly Established Federal Law

The Strickland standard is the clearly established federal law applicable to this claim.

### 2.   Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his state habeas petition (Ex. N at 4–5).  The First DCA denied the petition on the merits (Ex. O).

According to the trial transcript, the crack cocaine, marijuana, and box of "baggies" were admitted into evidence without objection from defense counsel (*see* Ex. B at 28–31).  Because the issue of admission of the items was not preserved for appellate review, appellate counsel's failure to argue error with respect to the trial court's admission of those items was not constitutionally deficient.  *See* Diaz, 402 F.3d at 1142; Atkins, 965 F.2d at 957; Francois, 741 F.2d at 1285–86.

Petitioner failed to demonstrate that the First DCA's adjudication of this IAAC claim was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Six.

### G.   Ground Seven:  "Petitioner's appellate counsel was constitutionally ineffective for failing to raise on appeal fundamental error of trial court's failure to instruct the jury on witness impeachment."

Petitioner asserts appellate counsel should have argued on direct appeal that the trial court abused its discretion by failing to instruct the jury on "witness impeachment" (ECF No. 15 at 14, 25–26).  Petitioner argues, "how can a jury make a credibility determination if they don't know what impeachment is" (*id.* at 26).

Petitioner contends the trial court committed fundamental error by failing to provide the jury with instructions on "the credibility of the witness and impeachment of a witness" (*id.*).

Respondent concedes that Petitioner exhausted this claim by presenting it to the state courts in his state habeas petition (ECF No. 30 at 41–42). Respondent contends the state court adjudicated the merits of the claim, and the adjudication was not based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 42–49).

      1.    Clearly Established Federal Law

The Strickland standard is the clearly established federal law applicable to this claim.

      2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Three of his state habeas petition (Ex. N at 6). The First DCA denied the petition on the merits (Ex. O).

Under Florida law, the standard of review applied to a decision to give or withhold a jury instruction is abuse of discretion. James v. State, 695 So. 2d 1229, 1236 (Fla. 1997). "Trial judges have wide discretion in decisions regarding jury instructions, and the appellate courts will not reverse a decision regarding an

instruction in the absence of a prejudicial error that would result in a miscarriage of justice." Johnson v. State, 747 So. 2d 436, 438 (Fla. 4th DCA 1999); *see also* James, 695 So. 2d at 1236 (a trial court has wide discretion in instructing the jury, and the court's decision regarding jury instructions are presumed correct on appeal).

Rule 3.390(d) of the Florida Rules of Criminal Procedure provides:

> No party may raise on appeal the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection.  Opportunity shall be given to make the objection out of the presence of the jury.

Fla. R. Crim. P. 3.390(d).  Thus, where the alleged error is giving or failing to give a particular jury instruction, Florida appellate courts have required the assertion of a timely objection.  *See* Castor v. State, 365 So. 2d 701, 703 (Fla. 1978).  An objection must be specific to apprise the judge of the error and preserve the issue for intelligent review on appeal.  *Id.*

When not preserved, an order or judgment of a trial court may be appealed only where the error alleged "would constitute fundamental error."  Fla. Stat. § 924.051(3); *see* Harrell v. State, 894 So. 2d 935, 941 (Fla. 2005) ("[T]he sole exception to the contemporaneous objection requirement is fundamental error.").  "[I]n order to be of such fundamental nature as to justify a reversal in the absence of timely objection the

error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." <u>F.B. v. State</u>, 852 So. 2d 226, 229–31 (Fla. 2003); *see also* <u>Thomas v. State</u>, 894 So. 2d 1000, 1003 (Fla. 1st DCA 2005) ("[F]undamental error in Florida is a structural error or an error without which a guilty verdict could not have been obtained.  Such an error amounts to a denial of due process.").

The trial transcript demonstrates that the court instructed the jury as follows with respect to assessing the evidence, including witness testimony:

> It is to the evidence introduced in this trial and to it alone that you are to look for that proof.  A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or the lack of evidence.  If you have a reasonable doubt, you should find the defendant not guilty.  If you have no reasonable doubt, you should find the defendant guilty.

> It is up to you to decide what evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.

> You should consider how the witnesses acted as well as what they said.  Some things you should consider are:

> One:  Did the witness seem to have an opportunity to see and know the things about which the witness testified?

> Two:  Did the witness seem to have an accurate memory?

Three:  Was the witness honest and straightforward in answering the attorney's questions?

Four:  Did the witness have some interest in how the case should be decided?

Five:  Does the witness's testimony agree with the other testimony and other evidence in the case?

You may rely upon your own conclusion about the witness.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.

(Ex. B at 184–85; *see also* Ex. A at 76).

Prior to the court's instructing the jury, the court and counsel discussed the proposed jury instructions (*see* Ex. B at 126–40).  Defense counsel did not object to the instructions regarding weighing the evidence, nor did counsel request additional instruction regarding witness credibility or impeachment (*id.* at 137–38).  Because the issue was not preserved, Petitioner's appellate counsel reasonably declined to argue it.

Further, the instructions that were provided to the jury in Petitioner's case instructed the jury on assessing the reliability of evidence, including factors to consider in deciding whether to believe or disbelieve all or any part of a witness's testimony.  The First DCA thus could have concluded that it was reasonable for appellate counsel to omit argument that the trial court's failure to provide additional

instruction was fundamental error (i.e., that the guilty verdict could not have been obtained "without the assistance of the alleged [failure to provide further instruction on witness credibility].").

Petitioner failed to demonstrate that the First DCA's adjudication of this IAAC claim was contrary to or an unreasonable application of <u>Strickland</u>. Therefore, he is not entitled to federal habeas relief on Ground Seven.

> H.   <u>Ground Eight: "Trial counsel was ineffective for failing to file a judgment of acquittal including the fact that marijuana was not tested and could not maintain court's finding of probable cause as well as a conviction on possession of marijuana within a 1000 ft. of a school."</u>

Petitioner contends defense counsel was ineffective for failing to move for a JOA at the close of the State's case and again at the "end of the case" (ECF No. 15 at 14, 26–28). Petitioner concedes he did not exhaust this IATC claim in state court, but argues he is entitled to review of the claim under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) (*id.*).

Respondent contends the claim is unexhausted and procedurally barred (ECF No. 30 at 49–51). Respondent further contends that even if Petitioner could establish cause for the procedural default, by virtue of the fact that he did not have counsel in the initial collateral review proceeding, Petitioner cannot establish prejudice, because

the evidence was sufficient to present a jury question as to whether the substance found in the glove compartment of Petitioner's car was marijuana (*id.* at 51–57).

As previously discussed, a federal court may consider the merits of a procedurally defaulted claim if the petitioner can show both "cause" for the default and "prejudice" from a violation of his constitutional right. Wainwright v. Sykes, 433 U.S. 72, 84–85, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court."  Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray, 477 U.S. at 488) (quoting Strickland, 466 U.S. at 688).

In Martinez v. Ryan, the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . ." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland [v. Washington, 466 U.S. 668 (1984)]."  Martinez, — U.S.—, 132 S. Ct. 1309, 1318, 182 L. Ed. 2d 272 (2012).  In such instances, the habeas petitioner "must also demonstrate that the

underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is

to say that the prisoner must demonstrate that the claim has some merit." *Id.*

In Hittson v. GDCP Warden, 759 F.3d 1210, 1262 (11th Cir. 2014), the

Eleventh Circuit explained Martinez's "substantial claim" requirement:

> Martinez articulated the "substantial claim" requirement as
> follows:
>
>> To overcome the default, a prisoner must . . . demonstrate
>> that the underlying ineffective-assistance-of-trial-counsel
>> claim is a substantial one, which is to say that the prisoner
>> must demonstrate that the claim has some merit. *Cf.*
>> Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154
>> L. Ed. 2d 931 (2003) (describing standards for certificates
>> of appealability to issue).
>
> Martinez, — U.S. at —, 132 S. Ct. at 1318–19. Neither Martinez nor
> Trevino [v. Thaler, — U.S. —, 133 S. Ct. 1911, 185 L. Ed. 2d 1044
> (2013)] elaborated on or applied this standard, but we take the Court's
> reference to Miller–El to mean that it intended that lower courts apply
> the already-developed standard for issuing a COA, which requires "a
> substantial showing of the denial of a constitutional right." 28 U.S.C. §
> 2253(c)(2).
>
> As the Court explained in Miller–El, "[a] petitioner satisfies this
> standard by demonstrating . . . that jurists could conclude the issues
> presented are adequate to deserve encouragement to proceed further."
> 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a
> "substantial showing" without the benefit of a merits determination by
> an earlier court, he must demonstrate that "jurists of reason would find
> it debatable whether the petition states a valid claim of the denial of a
> constitutional right." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct.
> 1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a

petitioner must show "that some jurists would grant the petition." Miller–El, 537 U.S. at 338, 123 S. Ct. at 1040. "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from Strickland.

Hittson, 759 F.3d at 1269–70 (footnotes omitted).

Here, Petitioner has failed to demonstrate that his underlying IATC claim has "some merit." Petitioner contends counsel was ineffective for failing to move for a JOA at the close of the State's case and again at the "end of the case." Petitioner additionally contends defense counsel was ineffective for failing to include, in his argument in support of a motion for a JOA, that there was no evidence that the

substance seized from Petitioner's glove compartment was scientifically tested and determined to be marijuana.

A motion for a JOA is properly made at the close of the State's case or at the close of all the evidence. *See* Fla. R. Crim. P. 3.380(a). If a motion is made at the close of the State's case, renewing a motion for a JOA at the close of all the evidence is not necessary to preserve a sufficiency-of-the-evidence claim for appellate review. *See* Morris v. State, 721 So. 2d 725, 726 (Fla. 1998); *see also* Amendment to Fla. R. of Crim. P. 3.380(b), 745 So. 2d 319 (Fla. 1998) (amending Rule 3.380(b) to reflect holding in Morris).

"A trial court should not grant a motion for judgment of acquittal 'unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.'" Jackson v. State, 25 So.3d 518, 531 (Fla. 2009) (quoting Coday v. State, 946 So. 2d 988, 996 (Fla. 2006)). "In reviewing the denial of a motion for judgment of acquittal, appellate courts apply a de novo standard of review and do not reverse a conviction where the conviction is supported by competent, substantial evidence." *Id.* "In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the

crime beyond a reasonable doubt." <u>Simmons v. State</u>, 934 So. 2d 1100, 1111 (Fla. 2006) (quoting <u>Bradley v. State</u>, 787 So. 2d 732, 738 (Fla. 2001)).

At Petitioner's trial, Deputy Dewees testified as follows:

Q.    In your 16 years of experience have you ever seen marijuana before?

A.    Yes, sir, plenty of times.

Q.    Have you ever identified marijuana before?

A.    Yes, sir, I have.

Q.    What you saw, was that marijuana?

A.    Yes, sir, it was.

(Ex. B at 83).

On defense counsel's cross-examination of Donald Walker, a senior crime lab analyst with the Florida Department of Law Enforcement, defense counsel elicited the following testimony regarding the marijuana:

Q.    Now marijuana.  Is there a test for marijuana?

A.    Yes, there is.

Q.    What is that test?

A.    There are two tests that we use in the laboratory for marijuana.  One is a chemical and one is a microscopic examination.

Q.    Why are there two tests?

A.    Our laboratory policy and procedures require us to do two independent analysis on every case.

Q.    Why is that, sir?

A.    It's good laboratory procedure.

Q.    And some substances can be confused with marijuana?

A.    That's correct.

Q.    In this case did you do any testing to determine if there was marijuana or not?

A.    No, sir, I did not.

Q.    And you couldn't testify as to whether the substance that was seized is marijuana or not without doing the correct testing at the lab?

A.    That's correct.

Q.    Just because something looks like it or smells like it or it appears to be doesn't necessarily mean it is; is that correct?

A.    Only a chemical analysis and a test would; that's correct.

Q.    So you've got to do it, in other words?

A.    That's correct.

(Ex. B at 109–10).

At the close of the State's case, defense counsel made a motion for a JOA (Ex. B at 113–15).  Additionally, counsel renewed the motion at the close of the evidence (*id.* at 124).

Viewing the evidence in the light most favorable to the State, including the foregoing testimony of Deputy Dewees, a rational trier of fact could have found beyond a reasonable doubt that the substance seized from the glove compartment of Petitioner's car was marijuana even though it was not submitted for chemical analysis. *See* <u>A.A. v. State</u>, 461 So. 2d 165, 165–66 & n.1 (Fla. 3d DCA 1984) ("Our sister courts have consistently held that it is not necessary for the state to prove the identity of marijuana by chemical or scientific proof.") (citing, among other authorities, <u>Dean v. State</u>, 406 So.2d 1162 (Fla. 2d DCA 1981) (officer, who had substantial experience in narcotics investigation and was trained to recognize marijuana, testified that he saw occupants of a car smoking a cigarette in a manner commonly used to marijuana; this, coupled with his statement that he smelled a strong odor of marijuana smoke coming from the car immediately thereafter, provided sufficient evidence for the jury to find that the defendant possessed less twenty grams of marijuana; "[t]he introduction of the contraband or the production of a chemical analysis is not always essential to a conviction for possession of a controlled substance"); <u>Turner v. State</u>, 388 So. 2d 254

(Fla. 1st DCA 1980) ("numerous cases hold that marijuana is not difficult to characterize without chemical analysis and that testimony of officers who have had experience searching for and identifying marijuana is sufficient" to establish that the substance is marijuana (citation omitted)).  *See also* Brooks v. State, 762 So. 2d 879, 893–894 (Fla. 2000) (citing with approval A.A., 461 So. 2d at 165, and holding as a matter of first impression that a person—as with an experienced law enforcement officer—who is experienced with marijuana or another controlled substance as either a dealer, user, or both, is similarly qualified to express an opinion regarding the identity of alleged controlled substances, in this instance, crack cocaine).  Therefore, it was proper to submit the issue to the jury, and defense counsel had no meritorious basis to argue for a JOA on the ground that there was no legally sufficient evidence identifying the substance as marijuana.  Further, there was no reasonable probability that the trial court would have granted the motion for a JOA if counsel had made that argument.

Additionally, to the extent Petitioner contends defense counsel failed to properly preserve denial of the motion for a JOA for appellate review, by failing to renew it at the close of all the evidence, the record refutes his claim.

Petitioner failed to show "cause" for his procedural default of Ground Eight and "prejudice" from the alleged violation of his right to effective assistance of counsel. Therefore, he is not entitled to a federal merits review of his procedurally defaulted IATC claim.

  I. <u>Ground Nine:  "Counsel ineffective [sic] for failing to object to State prosecutor's improper closing comments."</u>

Petitioner alleges the prosecutor made the following comment in closing argument:  "Defendant Hardy took the credit card, went to the ATM on the morning of the incident and withdrew the thousand dollars confiscated and put the card back in the center console with the narcotics" (ECF No. 15 at 14, 28).  Petitioner argues there was no evidence to support this comment; therefore, defense counsel should have objected to it.

Respondent contends this claim is unexhausted and procedurally barred (ECF No. 30 at 57–58).  Respondent further contends that even if Petitioner can establish cause for the procedural default, by virtue of the fact that he did not have counsel in the Rule 3.850 proceedings, Petitioner cannot establish prejudice, because any objection to the prosecutor's comments would have been properly overruled (*id.* at 59–62).

Petitioner concedes in his reply that he did not exhaust this claim in the state courts, but argues he is entitled to review of the claim under <u>Martinez</u> (ECF No. 38 at 12–13).

The trial transcript demonstrates that the prosecutor made the following comments during his initial closing argument:

> They found a bag of money in the car.  You heard what Deputy Rappa said Mr . Hardy—oh, yeah, the money's mine from another job. Everything else isn't his.  The drugs are packaged in a bag.  Money's packaged in a bag.

(Ex. B at 146).

Defense counsel then made the following comments during his closing argument:

> They are talking about there was money in the car.  People work. There was testimony that there was a bank card.  My client's allowed to have money.  He's allowed to have money.  There is no money in evidence.  They are making a big deal over this money.  It's not in evidence.  And there was a bank card.  There are things called automatic tellers.  It was 10:45 in the morning.  You can go to the bank and withdraw money.  No evidence of any sale whatsoever.  But I would suggest this to you.  There is a lack of evidence to any sale.  There is no evidence whatsoever.

(Ex. B at 161).

In response to defense counsel's argument, the prosecutor made the following comments:

Now I ask you, Mr. Griffith argues oh, well, he got [sic] a right to have money.  Who goes around with a thousand dollars setting [sic] in a plastic bag stuck on their driver's door in there [sic] little pocket?

Then you have to consider well, how could he know those drugs were there?  Well, what did the officer say?  His ID is found in the same spot—or his card, his cash card is found in the same spot with the cocaine in the center console.  Now how does he know—how can he not know if he's got—if he took that cash card to go get his thousand dollars and then put it back, how can he not know those drugs were there?
. . . .
At some point he [defense counsel] said well, don't let them railroad my client.  Well, where is the railroading coming from?  The evidence is clear the drugs were in his car.  His ID is on the drugs.  He's got a thousand dollars.  He's got a digital scale.  He's got baggies.  Where is the railroad coming from?
. . . .
Now either way you look at it, his ID or his cash card is with the drugs.  So if he took that and went and got his money out of the bank and then put it back, he had knowledge of those drugs.

(Ex. B at 169, 171–72).

Under Florida law, the standard for reviewing prosecutorial comments is the

following:

Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (citations omitted).  A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).   But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper.  *Id.* at 1507.   Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence.  *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).  Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence.  United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).    Additionally, a prosecutor may reply to remarks, comments, or assertions made by defense counsel.  *See* United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), vacated on other grounds, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), reinstated, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Here, the prosecutor's comments were an invited reply to defense counsel's remarks, and the prosecutor did no more than respond substantially in order to "right

the scale."  Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments, Petitioner failed to demonstrate that defense counsel's failure to object to the comments identified by Petitioner constituted deficient performance, or that there is a reasonable probability the outcome of trial would have been different if counsel had objected. Therefore, Petitioner is not entitled to relief on Ground Nine.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

  J. <u>Ground Ten:  "Newly discovered evidence—recantation testimony."</u>

  Petitioner contends his rights to due process and equal protection were violated when the state post-conviction court denied his claim of newly discovered evidence, asserted in his second Rule 3.850 motion, without an evidentiary hearing (ECF No. 15 at 15, 29–30).  Petitioner alleges he presented an affidavit of Hugh Owens, in which Owens recanted his deposition testimony that he smelled marijuana when he got into Petitioner's car, and stated that the officers coerced him into making that statement by threatening to prosecute him for the drug charges.  Petitioner argues that Mr. Owens's affidavit demonstrates that the officers fabricated their testimony that

they smelled marijuana, and thus lacked probable cause to search the car.  Petitioner

cites <u>Schlup v. Delo</u>, 513 U.S. 298 (1995) in support of his claim (*id.* at 30).

Respondent concedes Petitioner presented this claim to the state court in his

second Rule 3.850 motion (ECF No. 30 at 63).  Respondent contends the state court

adjudicated the merits of the claim, and the adjudication was not based upon an

unreasonable determination of the facts, or contrary to or an unreasonable application

of clearly established federal law (*id.* at 64–67).

Petitioner's claim concerns the State of Florida's application of its own post-

conviction procedures, not the legality of Petitioner's detention.  Under § 2254, a

petitioner can file a federal habeas challenge to a state court judgment "only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2254(a).  The Supreme Court has commented that

"habeas corpus is the appropriate remedy for state prisoners attacking the validity of

the fact or length of their confinement."  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 490, 93

S. Ct. 1827, 36 L. Ed. 2d 439 (1973).  Federal habeas relief is available to remedy

defects in a defendant's conviction and sentence, but "an alleged defect in a collateral

proceeding does not state a basis for habeas relief."  <u>Quince v. Crosby</u>, 360 F.3d 1259,

1262 (11th Cir. 2004); *see also* <u>Alston v. Dep't of Corrs., Fla.</u>, 610 F.3d 1318, 1325

(11th Cir. 2010); <u>Carroll v. Sec'y, DOC</u>, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases).  There is a valid reason behind this principle:  "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy."    <u>Carroll</u>, 574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." <u>McCullough v. Singletary</u>, 967 F.2d 530, 535 (11th Cir. 1992).  Therefore, Petitioner's challenge to the procedures employed by the state court in the post-conviction proceeding, i.e., the state court's failure to hold an evidentiary hearing, does not provide a basis for federal habeas relief.

Additionally, Petitioner's newly discovered evidence claim is not cognizable in federal habeas.  As the Eleventh Circuit explained:

> "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial.  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*

Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002); *see also* Mize v. Hall, 532 F.3d 1184, 1195 (11th Cir. 2008); Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (refusing to consider a claim of actual innocence in a non-capital case because "our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases").   Furthermore, Petitioner's claim is actually one of legal innocence, not factual innocence.   Petitioner contends that Hugh Owens' affidavit demonstrates that there was no probable cause to justify the search of his car.   Under Schlup's actual innocence requirement (which may be used to overcome federal procedural and time bars), factual innocence is required and not merely legal innocence.   *See* Johnson v. Alabama, 256 F.3d 1156, 1165–66 (11th Cir. 2001) (affirming district court's dismissal of procedurally defaulted § 2254 petition where petitioner's claim of actual innocence was based upon insufficiency of evidence at trial, not factual innocence); Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1274 (11th Cir. 2004) (en banc ) ("Actual factual innocence is required; legal innocence is not enough.").   Therefore, Petitioner's newly-discovered-evidence claim is not cognizable.

Moreover, the fact that the Supreme Court has not resolved whether a petitioner may be entitled to habeas relief based on a freestanding actual-innocence claim, *see*

McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1931, 185 L. Ed. 2d 1019 (2013),
necessarily means that Petitioner cannot demonstrate that the state court's adjudication
of this claim was contrary to or an unreasonable application of clearly established
federal law.  Therefore, Petitioner is not entitled to federal habeas relief on Ground
Ten.

      K.    Ground Eleven:  "Trial counsel was ineffective for failing to file for [sic]
a motion of limine [sic] prohibiting officers from labeling the police place of
arrest as an area known for narcotics activity as well as speaking on non-
existent in [sic] evidence misleading jurors to believe phone calls were made
to cause or justify the contact made with the defendant."

Petitioner contends defense counsel was ineffective for failing to file a pre-trial
motion in limine to exclude testimony that the store where Petitioner was arrested was
known for drug activity (ECF No. 15 at 15, 31–33).  Petitioner also contends defense
counsel should have moved to exclude photographs of Petitioner and other members
of a rap group called "Trap Star," which were found in Petitioner's car and offered by
the State to prove that Petitioner owned the car (Petitioner alleges "trapping" is a term
for selling drugs, and "trap stars" are those who successfully sell drugs) (*see id.*, Ex.
A).  Petitioner argues that such evidence was introduced solely to show bad character
or propensity, and unduly prejudiced the jury.

Respondent contends this claim is unexhausted and procedurally barred (ECF No. 30 at 68–69).  Respondent further contends that even if Petitioner can establish cause for the procedural default, by virtue of the fact that he did not have counsel in the Rule 3.850 proceedings, Petitioner cannot establish prejudice, because any objection to the admission of the evidence would have been properly overruled (*id.* at 69–73).

Petitioner concedes in his reply that he did not exhaust this claim in the state courts, but argues he is entitled to review of the claim under <u>Martinez</u> (ECF No. 38 at 18–22).

1.    <u>Testimony regarding drug activity at the store</u>

The trial transcript demonstrates that Petitioner's theory of defense was that the deputies made contact with Petitioner and Hugh Owens solely because they were black and to harass them, and the officers were determined to arrest Petitioner for something, so they fabricated reasons to search the car (the odor of marijuana and the canine's alert), and fabricated that Petitioner told them that he knew there were drugs in the car (*see* Ex. B at 150–52, 157–66).  Testimony regarding drug activity at the store initially came out during defense counsel's cross-examination of Deputy Rappa:

Q. What were they [Petitioner and Hugh Owens] doing that caused you to want to pat them down other than being young black males at a convenient [sic] store?

A. The numerous calls we had received there about narcotics activity.

Q. Well, were they doing anything?

A. Not that I saw at that time, no.

Q. Okay.  They weren't doing anything, and you checked to see if there were any warrants out for them?  And there weren't and you still wanted to pat them down?

A. Yes.

Q. And you did pat them down?

A. I did.

Q. And when you patted them down did you find any contraband, guns, weapons, hand grenades, anything on them?

A. No, I did not.

Q. And that didn't satisfy you so you took it one step further; is that right?

A. As far as asking if that was his car that he was standing in front of.

Q. What difference did it make?  You got their names.  First of all, they are doing nothing wrong and you go up and you decide you want their names.  You get it.  They are polite.  They are lawfully where they are suppose [sic] to be.  Then after giving you their names, you

check to see if they are wanted for anything and you determine they are not.  Then after determining there is nothing wrong with what they're doing, they are legally waiting for some food, you decide you want to pat them down.  And you pat them down and again there is nothing.  So then you take it one step further and decide you want to know what kind of car they are driving.  Why?  Just because they are black?

     A.    No.

     Q.    What other reason would you have?

     A.    The citizens of the community there, as well as numerous phone calls to dispatch—

     Q.    No, no, no.  You tell me what other reason you have.

. . . .

     THE WITNESS:   —have complained to the Sheriff's Office and deputies in that community about the narcotics activity that goes on at the store.

     Q (By Mr. Griffith).    Okay.  And you determined that there was no narcotics on those young men?

     A.    No, not on person.  No.

     Q.    And you determined they were there lawfully?

     A.    Yes.

. . . .

     Q (By Mr. Griffith).    Did you run a check on the car to see if it was stolen?

     A.    I did.

     Q.    And was the car stolen?

      A.     No.

(Ex. B at 33–36).

After defense counsel elicited this testimony from Deputy Rappa, the prosecutor called Deputy Watkins as a witness and asked him whether he had occasion to go to the Green Acres store during the morning of December 18, 2008 (Ex. B at 66).  Watkins responded yes (*id.*).  The prosecutor then asked the reason Watkins went to that store, and Watkins responded, "We had received numerous complaints of narcotics activity, people selling narcotics at the store." (*id.*).

During closing argument, the prosecutor mentioned the officers' testimony as follows:

> Good afternoon, ladies and gentlemen.  I told you this morning that we had an opportunity to come back and talk to you.  Now I watched y'all in the trial.  I saw y'all paying attention and I watched you when Mr. Griffith was questioning the officer.  What were they doing?  Well, they weren't doing nothing.  Well, were they cooperative?  Well, yes. They were very cooperative.

> Now it may seem that these officers were wrong for doing what they were doing, but if you heard the testimony from at least two of the officers, they said they are getting phone calls from the community because there is a lot of drug dealing going on in that area by that store.

> They went over there to do what they are suppose [sic] to do investigate.  They drive by, they saw a couple people, they went and talked to them.

(Ex. B at 144–45).

Defense counsel addressed the officers' testimony during his closing argument

as follows:

> Where do I start?  I'll start by telling you what my client is guilty
> of is being a black male who's young, with another black male, standing
> in front of a convenience store.  They weren't doing anything wrong.
> And then you have the police swoop down on them.  The police said it's
> 10:45 in the morning, you have two black men standing in the front of
> the store.  They didn't say they got a call about drug dealing.  They
> didn't say they got a call to come over there and investigate anything
> wrong.  They didn't say that there was anything going on other than they
> were on patrol and they happened to see a couple black kids—or young
> men.
>
> And what did they do?  They said well, let's go see what they are
> up to.  What's your name?  They got their names.  Ran warrants on them.
> Everybody was polite.  Then instead of just saying okay, we're going to
> go, what did they do?  They go one step further.  We want to pat you
> down.  There was no reason to pat them down, but I will suggest to you
> at that point somebody was going to jail for something.
>
> They pat them down.  There is nothing there.  Then all of a sudden
> the idea comes up, oh, there must be the odor of marijuana.  Well, the
> interesting thing about that is we got one deputy who is Deputy Watkins,
> the dog deputy.  He doesn't smell any marijuana.  Then we have another
> deputy, Deputy Rappa, who says he smells raw marijuana.  Then we've
> got Deputy Dewees who smells burned marijuana.  I suggest to you
> they're making all this up because they are not going to have three
> people—and we have Ms. Dill, the crime scene tech, who smells no
> marijuana and she's in the car taking pictures.
> . . . .
> They got a black kid.  Let's hang him up and we're going to
> prosecute him, and that's it.  We're not going to bother doing the

investigation we need to do and that every citizen of this country deserves.  They did not bother doing any of that.

. . . .

I suggest to you that you cannot allow as jurors in this community people to be railroaded like this.  It's not fair.  Where is the evidence that my client knew about this [the drugs in the car] other than a statement by one deputy that's not recorded when there are two cameras that could have been used to record.

(Ex. B at 150–51, 159–60, 163).

The prosecutor again referenced the drug activity at the store during rebuttal:

Defense counsel wants you to think, well, hey, here's two black men; they shouldn't have been harassed at all.  What are police suppose [sic] to do when they get reports saying there are sales going on around here?  Are they suppose [sic] to just do nothing?  Or do they go up to people, talk to people, see what's going on?

. . . .

Even if it's exactly as Mr. Griffith says, even if they went up there and they said well, there is a couple of young black men, let's just go harass them.  Even if it's that, does it mean that those drugs weren't where they were at [sic]?  Does it mean that the law wasn't broken?

. . . .

He [defense counsel] wants you to look at that and say how dare those officer [sic] go and bother those boys.  That's what he's opening you do [sic], that they should have never been bothered.  They did their job.  They received reports.  They patrolled the area.  They contact people.  They did their job.  Just because in this case it has to be that there's drugs involved must be a railroad.

(Ex. B at 166–67, 168, 171).

In <u>Gillion v. State</u>, 573 So. 2d 810 (Fla. 1991), the Florida Supreme Court addressed whether the characterization or identification of a specific location as a high crime area unduly prejudices a defendant who is arrested there.  *Id.* at 811.  The state supreme court held that testimony identifying the area of a defendant's arrest as a high crime area could be unduly prejudicial depending on the facts of each case.  *Id.* at 811–12.

In Petitioner's case, the defense pursued the theory that Petitioner's prosecution was the product of racial prejudice, harassment, and fabrication by law enforcement. Testimony and argument regarding the reason, or lack thereof, for the officers' approaching Petitioner and Hugh Owens, questioning them, patting them down, searching Petitioner's car, and arresting Petitioner, was central to this defense theory, and thus relevant.  Further, the prosecutor did not mention drug activity at the store in his opening statement, and he did not elicit any testimony on this issue until <u>after</u> defense counsel elicited it from Deputy Rappa when questioning him about the reason he approached Petitioner.  Because testimony regarding drug activity at the store was relevant to refute the defense theory that there was no reason for the officers to approach, question, and investigate Petitioner, other than racial harassment, there is no reasonable probability that an objection by defense counsel would have been

successful.  *See, e.g.*, <u>Green v. State</u>, 160 So. 3d 111, 113 (Fla. 4th DCA 2015)

(holding that testimony regarding the high crime character of the neighborhood, in

which defendant was arrested for sale of cocaine and trafficking in cocaine, was

relevant and admissible to refute defendant's objective entrapment defense, that the

storefront was set up simply to target and prey upon the low-income residents of the

neighborhood;  after defense counsel raised the issue of objective entrapment in his

opening statement, the prosecutor elicited testimony from the officers regarding their

reasons for setting up the undercover operation in that neighborhood, which was

properly done in anticipation of the defendant's theory of the case).

Petitioner failed to show that his underlying IATC claim was a "substantial

one."  Therefore, he failed to satisfy the <u>Martinez</u> standard for obtaining a federal

merits review of his procedurally defaulted IATC claim.

### 2.   Photographs of rap group

With regard to defense counsel's alleged failure to object to admission of the

"Trap Star" photographs, a copy of which Petitioner submitted as an exhibit to his

habeas petition (*see* ECF No. 15, Ex. A), the trial transcript demonstrates that defense

counsel <u>did</u> object to admission of the photographs (Ex. B at 54–60).  Further, defense

counsel made the exact argument that Petitioner faults him for not making (*id.*).

Therefore, Petitioner failed to show that his procedurally defaulted IATC claim is a "substantial one," and he thus is not entitled to a federal merits review of the claim through <u>Martinez</u>.  Moreover, notwithstanding Petitioner's failure to satisfy the exhaustion requirement, the IATC claim is refuted by the state court record and thus without merit.

## V.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Case No.:  3:14cv144/MCR/EMT

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the third amended petition for writ of habeas corpus (ECF No. 15) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 1st day of March 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**